1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ARTURO AMAYA, et al.,                    Case No.  15-cv-02326-JSW

8              Plaintiffs,

9         v.                                  **ORDER DENYING WITHOUT**
                                              **PREJUDICE MOTION TO COMPEL**
10   SPARK ENERGY GAS, LLC, et al.,           **ARBITRATION; DENYING MOTION**
                                              **TO DISMISS; AND GRANTING**
11             Defendants.                    **ADMINISTRATIVE MOTION TO**
                                              **CONTINUE HEARING DATE FOR**
12                                            **MOTION FOR CLASS**
                                              **CERTIFICATION**
13
                                              Re: Dkt. Nos. 48, 71
14

15        Now before the Court is the motion of Defendant Spark Energy Gas, LLC, individually

16   and as successor-in-interest to Defendant Spark Energy Gas, L.P., ("Defendants") to dismiss all

17   claims in the First Amended Complaint and to compel arbitration of the claims of Plaintiff Barbara

18   Gehrke.[1]  The Court has considered the parties' papers, relevant legal authority, and the record in

19   this case.  For the reasons that follow, the Court hereby DENIES WITHOUT PREJUDICE the

20   motion to compel arbitration and DENIES the motion to dismiss.  Additionally, the Court

21   GRANTS Plaintiffs' administrative motion to continue the schedule for the briefing and hearing of

22   Plaintiffs' motion for class certification.[2]

23                                    **BACKGROUND**

24        Plaintiffs allege that Defendants are retail energy suppliers that provide retail utilities

25   services including natural gas and electricity.  Plaintiffs are former customers of Defendants.

26   _____

27   [1]  Defendants' motion to dismiss includes a request for dismissal of the claims of then-Plaintiff
     Margaret Smith.  This portion of the motion, however, is moot in light of the November 18, 2015
28   notice of withdrawal of Plaintiff Smith.  (Dkt. No. 53.)
     [2] The Clerk has terminated Docket No. 69, as superseded by Docket No. 71.

United States District Court
Northern District of California

1   Plaintiffs allege that Defendants engage in fraudulent and deceptive bait and switch sales

2   practices.  Specifically, Plaintiffs allege that in or around October 2014, a representative of

3   Defendants approached Plaintiff Arturo Amaya at his home in Los Angeles, California and

4   convinced him to switch his energy provider from the Southern California Gas Company to Spark.

5   (First Amended Class Action Complaint ("FAC") ¶ 12.)  The discussion was "apparently

6   'scripted.'"  (*Id.*)  "The representative from Spark informed Plaintiff Amaya that he was signing

7   people up for a program designed to help low income families save money on their energy bills.

8   Specifically, the representative assured Plaintiff Amaya that his gas bills would decrease by"

9   twenty-five percent.  (*Id.*)  However, instead of decreasing, Plaintiff Amaya's bills increased by

10  approximately twenty to thirty percent.  (*Id.* ¶ 13.)

11         Likewise, as to Plaintiff Gehrke, Plaintiffs allege that Defendants' representatives

12  approached her at her home in Rancho Cordova, California in or around February 2015.  (*Id.*

13  ¶ 14.)  In an "apparently 'scripted' conversation," Defendants' representative convinced her to

14  switch to Spark by promising her that her energy bills would go down.  (*Id.*)  Instead, her energy

15  bills increased by approximately one hundred percent.  (*Id.* ¶ 16.)  Ms. Gehrke also was

16  guaranteed that "she would receive a percentage savings, as specified in a 'welcome letter' off of

17  PG&E's base energy rate for natural gas in the first two months with Spark."  (*Id.* ¶ 15.)  When the

18  welcome letter arrived, however, it did not provide savings, but "quoted the exact same gas billing

19  rate that she would have received if she maintained Pacific Gas & Electric as her energy

20  provider."  (*Id.*)

21         In addition to these specific allegations, the FAC includes additional allegations relating to

22  the broader scheme, to the effect that the deceptive and high-pressure representations made by

23  Defendants' representatives "were derived from Spark selling scripts, marketing and training

24  materials," were part of a pyramid-marketing scheme, and targeted "low-income earners, the

25  elderly and non-English speaking persons," and were made more harmful by a lengthy and

26  difficult cancellation process.  (*Id.* ¶¶ 17, 25-28.)

27         Plaintiffs allege the following claims on behalf of a putative class: (1) violation of

28  California's Consumer Legal Remedies Act, California Civil Code section 1750 *et seq.*;

United States District Court
Northern District of California

2

1    (2) common law fraud; (3) deceit by concealment in violation of California Civil Code sections

2    1709 and 1710; (4) breach of contract and of the covenant of good faith and fair dealing;

3    (5) violation of California's false advertising law, California Business and Professions Code

4    section 17500, *et seq.*; (6) violation of California's false advertising law, California Business and

5    Professions Code section 17507, *et seq.*; (7) violation of California's Unfair Competition Law,

6    California Business and Professions Code section 17200, *et seq.* ("unfair" and "fraudulent"

7    prongs); (8) violation of California's Unfair Competition Law, California Business and

8    Professions Code section 17200, *et seq.* ("unlawful" prong); and (9) negligent misrepresentation.

9         The Court shall address additional facts as necessary in its analysis.

10                                      **ANALYSIS**

11   **A.    Defendants' Motion to Compel Arbitration.**

12        **1.    Legal Standards Applicable to the Motion to Compel Arbitration.**

13        Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,

14   irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

15   revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration

16   agreement involves a transaction involving interstate commerce, thereby falling under the FAA,

17   the Court "must issue an order compelling arbitration if the following two-pronged test is

18   satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute

19   at issue." *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *see also*

20   9 U.S.C. §§ 2, 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

21   2000).

22        The FAA represents the "liberal federal policy favoring arbitration agreements," and "any

23   doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*

24   *H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA,

25   "once [the Court] is satisfied that an agreement for arbitration has been made and has not been

26   honored," and the dispute falls within the scope of that agreement, the Court must order

27   arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The

28   "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced

United States District Court
Northern District of California

3

according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995) (quotation omitted). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted). When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999). The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

However, a separate question exists when the Court is presented with the issue of whether an agreement between the parties to arbitrate "was ever concluded." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). The parties agree that the party moving to compel arbitration has the burden to prove, by a preponderance of the evidence, that an agreement to arbitrate exists. (Dkt. Nos. 56, 57.) To be enforceable, an arbitration agreement must first be valid as a matter of state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). As to that question, the burden remains on the party moving to compel arbitration. *See United Computer*, 756 F.3d at 766 ("[T]here is no evidence that either NCR or Lucent ever entered into such an agreement with UCS . . . . [T]he burden remains upon UCS to demonstrate why either one of those entities should remain in this litigation."); *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1282 (2008) ("The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence."). The party opposing the petition to arbitrate, however, retains "the burden of proving by a preponderance of the evidence any fact necessary to its defense." *Bruni*, 160 Cal. Appl 4th at 1282, *cited in Li v. A Perfect Day Franchise, Inc.*, No. 10-cv-01189-LHK, 2011 WL 250418, at *4 (N.D. Cal. Jan 25, 2011). "'When considering a motion to compel arbitration, the court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56. . . . If there is doubt as to whether such an agreement exists, the matter should be resolved through an evidentiary hearing or mini-trial.'" *Garbacz v. A.T. Kearny, Inc.*, No. C 05-05404 JSW, 2006 WL 870690, at *2 (N.D. Cal. Apr. 4,

United States District Court
Northern District of California

1   2006) (quoting *McCarthy v. Providential Corp.*, No. C 94-0627 FMS, 1994 WL 387852, *2 (N.D.

2   Cal. July 19, 1994)).

3              **2.       The Court Denies the Motion to Compel Arbitration.**

4              The disputed issue presented by Defendants' motion to compel arbitration concerns

5   whether a valid agreement to arbitrate was ever concluded between Defendants and Plaintiff

6   Barbara Gehrke.  Defendants assert that the terms of service that they sent to Ms. Gehrke, and

7   which she accepted, contained an arbitration clause.  Plaintiffs respond that the only terms of

8   service received by Ms. Gehrke did not contain any arbitration clause.  Both sides have presented

9   evidence.  The Court concludes that this disputed factual issue cannot be resolved on the present

10  record, and denies the motion to compel arbitration without prejudice.

11             In support of the motion, Defendants submit a January 19, 2015 welcome letter addressed

12  to Ms. Gehrke, accompanied by a document titled "California Residential and Small Commercial

13  Customer Disclosure Statement and Terms of Service."  (Dkt. No. 48-7.)  The top of pages 2-8 of

14  the terms of service document bears an identifying line that reads

15  "SEG_CA_RESI_SMCOMM_20140905."  (*Id.*)  Defendants submit these documents as exhibits

16  to the Declaration of Kira Jordan, the Senior Marketing Director for Spark Energy, LLC.  (Dkt.

17  No. 48-1.)  Jordan declares that she has personal knowledge of the authenticity of Defendants'

18  terms of service document due to her position within the company and "from reviewing Spark's

19  records," and that based on that knowledge, Defendants' copy of the welcome letter and terms of

20  service are true and correct.

21             On the other hand, Plaintiffs submit the declaration of Ms. Gehrke, who attaches what she

22  declares to be a true and correct copy of the January 19, 2015 welcome letter and terms of service

23  that she received from Defendants.  (Dkt. No. 63-1.)  The top of pages 2-7 of Plaintiff's terms of

24  service document bears an identifying line that reads "SEG_CA_RESI_SMCOMM_20140409."

25  (*Id.*)  Plaintiffs initially submitted an unauthenticated copy of the welcome letter and terms of

26  service, with some of the pages duplicated and incorrectly ordered.  (Dkt. No. 49-1.)  In the

27  interest of justice and in the exercise of discretion, the Court gave Plaintiffs an opportunity to file

28  supplemental evidence to explain and attempt to cure these deficiencies (and Defendants an

United States District Court
Northern District of California

5

1   opportunity to respond).  Plaintiffs have done so, and have succeeded in raising a material issue of

2   fact regarding which version of the terms of service was mailed to Ms. Gehrke.

3          Indeed, on the present record, the Court finds that even if the burden of proof rested on

4   Plaintiffs, Plaintiffs have met that burden.  Ms. Gehrke declares that she received the version of

5   the welcome letter and terms of service with no arbitration clause, and that she never received

6   another version prior to filing her complaint in this action.  (Dkt. No. 63-1, ¶¶ 5-12.)  This

7   declaration is unambiguous and within her personal knowledge.

8          On the other hand, even though Ms. Jordan has, Defendants contend, "personal knowledge

9   of how to review Spark's CIS system and retrieve a customer's Welcome Letter and [Terms of

10  Service]," (Dkt. No. 64, at 2:24-25), Ms. Jordan's testimony submitted to the Court lacks

11  foundation with respect to Ms. Jordan's basis of knowledge of how Defendants' electronically-

12  maintained copies of the terms of service are created and stored.  (Dkt. 56-1 at PDF 14-16 (Depo.

13  100-02).)  For example, the Court cannot ascertain on the present record whether Defendants

14  receive from their third-party vendor and store an original PDF copy of the terms of service

15  actually sent by Defendants' third-party vendor to each customer, or whether Defendants store

16  customer data that is used, at need, to re-generate a terms of service document that is intended to

17  duplicate the original based on inputs such as geographic region and the date the terms of service

18  document was sent to the customer.  It is undisputed that the welcome letter and terms of service

19  were sent to Ms. Gehrke by a third-party vendor, although the identity and location of the third-

20  party vendor has been the subject of some dispute.  (*e.g.*, Dkt. No. 64-1 ¶ 3.)  Ms. Jordan's

21  testimony that it is not possible to alter the PDF documents at will does not adequately answer the

22  question of how the documents are generated and stored in the first place, whether by Defendants,

23  the third party vendor, or someone else.  (*e.g.*, Dkt. 57-2 at PDF 21, Depo. 179.)  This ambiguity is

24  important because the addition of the arbitration clause to Defendants' terms of service occurred

25  around the time that Ms. Gehrke's terms of service were sent to her on January 19, 2015.  Ms.

26  Jordan testified to her belief that the change in the terms of service was actually effectuated in late

27  December 2014 or early January 2015, but the present record does not disclose sufficient

28  foundation for that belief for the Court to determine that it is impossible that the third-party vendor

United States District Court
Northern District of California

sent Ms. Gehrke the older version of the terms of service on January 19, 2015. (Dkt. 57-2 at PDF 15; Depo. 155.) And Ms. Gehrke's declaration that she received the older version is evidence that it is possible, raising a factual question.

Defendants have provided no testimony from a witness who can fill in the gaps in Ms. Jordan's knowledge. Nor, it seems, have they as yet had the opportunity to depose Ms. Gehrke regarding her recent declaration. In short, the evidence Defendants have presented to date fails to demonstrate the existence of a valid arbitration agreement between the parties. If the terms of service agreed to by Ms. Gehrke did not include an arbitration clause, there is no valid arbitration agreement, and Ms. Gehrke cannot be compelled to arbitrate. Accordingly, the Court DENIES Defendants' motion to compel.

The Court does not reach Defendants' objections to the Chase Declaration and to paragraphs 1-4 of the Gehrke Declaration. The Court does not need to reach those issues to decide that paragraphs 5-12 of the Gehrke Declaration are sufficient to rebut Defendants' evidentiary showing and raise a factual issue with regard to which terms of service were sent to Ms. Gehrke.

Pursuant to 9 U.S.C. § 4, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." Thus, the Court may hold a trial or evidentiary hearing to resolve whether an agreement to arbitrate exists. This denial of the motion to compel arbitration is WITHOUT PREJUDICE to Defendants renewing their motion after additional discovery, or filing a motion for the Court to conduct an evidentiary hearing or other proceeding on this issue.

**B.      Defendants' Motion to Dismiss.**

        **1.      Legal Standards Applicable to the Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

United States District Court
Northern District of California

7

1  conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

2  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

3       Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

4  must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A

5  claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw

6  the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v.*

7  *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  If the allegations are

8  insufficient to state a claim, a court should grant leave to amend, unless amendment would be

9  futile.  *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss &*

10  *Lieche, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

11       Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

12  Federal Rule of Civil Procedure 9(b), which requires that a plaintiff claiming fraud "must state

13  with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy

14  Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular

15  misconduct which is alleged to constitute the fraud charged so that they can defend against the

16  charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d

17  727, 731 (9th Cir. 1985).  This specificity must include an account of the "time, place, and specific

18  content of the false representations as well as the identities of the parties to the

19  misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation

20  omitted).  A fraud by omission claim, however, does not need to meet the strict requirements of

21  Rule 9(b) because in such cases, "a plaintiff cannot plead either the specific time of the omission

22  or the place, as he is not alleging an act, but a failure to act." *Morris v. BMW of North America,*

23  *LLC*, No. C 07-02827 WHA, 2007 WL 3342612, at *5 (N.D. Cal. Nov. 7, 2007) (quoting

24  *Washington v. Baezinger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987)).

25       As a general rule, "a district court may not consider material beyond the pleadings in ruling

26  on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citation

27  omitted), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th

28  Cir. 2002).  However, documents subject to judicial notice, such as matters of public record, may

United States District Court
Northern District of California

8

be considered on a motion to dismiss.  *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  The Court may also consider "material which is properly submitted as part of the complaint."  *Branch*, 14 F.3d at 453 (citation omitted).  Finally, the Court may consider a document not attached to the FAC if (1) the complaint refers to the document; (2) the complaint necessarily relies on the document; (3) the document is central to the plaintiff's claim; and (4) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *see also Harris*, 682 F.3d at 1132.  If this test is satisfied, the Court may treat such a document as part of the complaint, and may assume that its contents are true for the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  The "district court may, but is not required to incorporate documents by reference."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012).  In considering such documents, the Court does not convert a motion to dismiss to one for summary judgment.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

### 2.    The Court Denies the Motion to Dismiss.

Defendants move to dismiss each of Plaintiffs' claims in the FAC.  They rely on three legal theories.  First, Defendants contend that the Court should consider various contracts and selling scripts to determine that no scripted misrepresentations were made, and, if they were, that Plaintiffs could not have reasonably relied on the alleged oral misrepresentations made by sales representatives because the written contracts that Plaintiffs received before having to make a binding decision about switching utility providers contained complete, true, and correct information about each of the matters allegedly misrepresented orally.  Second, Defendants contend that Plaintiffs lack standing to pursue claims based on variable rates, because their contracts were never converted from fixed to variable rates.  Third, Defendants contend that Plaintiffs' allegations of fraud are insufficiently particularized under Federal Rule of Civil Procedure 9(b).

In order to dismiss under Defendants' first theory, the Court would need to rely on sales

United States District Court
Northern District of California

1  scripts, welcome letters, and terms of service that are not attached to the FAC, but have been

2  submitted by Defendants as exhibits to a declaration in support of the motion to dismiss.  (Dkt.

3  No. 48-4–48-7.)  The Court may consider a document not attached to the FAC if (1) the complaint

4  refers to the document; (2) the complaint necessarily relies on the document; (3) the document is

5  central to the plaintiff's claim; and (4) no party questions the authenticity of the copy attached to

6  the 12(b)(6) motion.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

7      With regard to the sales scripts, in the FAC, Plaintiffs allege that Defendants'

8  representatives' discussions with them were "apparently 'scripted.'"  (FAC ¶¶ 12, 14.)[3]  They

9  further allege that "[e]ach representation made orally by or on behalf of the Defendant was

10  consistent with one another and were [sic] derived from Spark selling scripts, marketing and

11  training materials"; that "Defendant's centrally orchestrated scheme involves training sales

12  representatives through sophisticated and uniform selling scripts and other marketing materials";

13  and that Defendants provide their sales representatives with "training materials and selling

14  'scripts.'"  (*Id.* ¶¶ 17, 26, 28.)  Defendants contend that these allegations are sufficient to permit

15  the Court to consider the scripts attached as Exhibits 3 and 7 to the Declaration of Kira Jordan in

16  support of the motion to dismiss.

17      The Court finds that the sales scripts are central to Plaintiffs' claim.  The Court need not

18  reach the question of whether the scripts proffered by Defendants were referred to and relied upon

19  in the FAC, however, because it is plain that Plaintiffs question their authenticity.  *See Harris*,

20  682 F.3d at 1132.  This fact differentiates this case from one in which a plaintiff pleads himself

21  out of a claim because documents attached to or incorporated by his complaint set forth

22  *uncontested* facts that effectively and persuasively rebut the complaint's conclusory allegations.

23  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  Here, the sales

24  scripts proffered by Defendants are in tension with the factual allegations of the Complaint

25  regarding what occurred during the "apparently 'scripted'" conversations, but the factual

26

27  _____

[3]  The Court does not consider the allegations or documents relating to former Plaintiff Margaret
28  Smith, who has been withdrawn as Plaintiff following her death.  In any event, doing so would not
alter the analysis of this order.

United States District Court
Northern District of California

1    allegations of paragraphs 12-16 of the Complaint are not conclusory and the proffered scripts are

2    insufficient to effectively and persuasively rebut them.

3            Moreover, Plaintiffs have expressly questioned the authenticity of the sales scripts as the

4    only source material for the "apparently scripted" conversations of Defendants' sales

5    representatives. *Compare Davis*, 691 F.3d at 1161 (holding that the plaintiff did not challenge the

6    documents' authenticity despite ample opportunity to do so); *Knievel v. ESPN*, 393 F.3d 1068,

7    1076 (9th Cir. 2005) (discussing documents of undisputed authenticity).  The proffered scripts are

8    documents kept internally by Defendants, which were not available to Plaintiffs before being

9    produced as exhibits to the Jordan Declaration.  Plaintiffs have as yet had no opportunity, through

10   discovery, to test either the authenticity of the proffered sales scripts or to investigate whether

11   other training and marketing materials exist that supplement or contradict the proffered sales

12   scripts.  Of course, if Plaintiffs only asserted that they had not previously had access to the

13   proffered scripts, this in and of itself would be insufficient to challenge the scripts' authenticity.

14   An assertion that Plaintiffs "have not had access to and reviewed the proffered documents is a

15   matter unrelated to their authenticity—i.e., whether the documents are 'what [their] proponent

16   claims.'"  *Davis*, 691 F.3d at 1161 (quotation omitted).  Here, however, Plaintiffs do more than

17   assert that they have not had access to or previously reviewed the sales scripts.  In contrast to the

18   plaintiffs in *Davis*, Plaintiffs dispute the authenticity of the proffered scripts and correctly contend

19   that their lack of access to the scripts has deprived them of the opportunity to test the scripts'

20   authenticity.  (*See, e.g.*, Opp. at 11 ("Spark has not—and, absent discovery, cannot—sufficiently

21   demonstrate that the scripts it produced are the same scripts used by the sales representatives who

22   approached Plaintiffs. . . .  Spark's production of these unauthenticated 'sales scripts' do[es] not

23   rule out the possibility its agents utilize *additional* uniform documents and practices to induce

24   consumers to switch to Spark, as alleged in the FAC.").)  Accordingly, the Court will not consider

25   the proffered sales scripts as documents whose authenticity no party questions.  Without the sales

26   scripts, the Court must reject Defendants' argument that the Complaint fails adequately to allege

27   any scripted misrepresentations.

28           For the reasons discussed in connection with Defendants' motion to compel arbitration, the

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1   Court likewise finds that on the present record the terms of service sent by Defendants to Plaintiff

2   Gehrke cannot be considered as documents whose authenticity no party questions.  The welcome

3   letters present a closer question, however.  In the FAC, Plaintiffs refer to and rely on a welcome

4   letter that Plaintiff Gehrke received from Spark Energy, although they do not refer to a welcome

5   letter for Plaintiff Amaya.  (FAC ¶ 15.)  Moreover, no party has questioned the authenticity of the

6   welcome letters submitted by both Plaintiffs and Defendants as such, only of the terms of service

7   attached thereto.  (Dkt. Nos. 48-5, 48-7, 49-1, 63-1.)  The Court concludes, however, that the

8   welcome letters and terms of service cannot, at this stage of the litigation, be considered

9   separately.  Although the welcome letters set forth certain plan details, including some initial fee

10  rates, these can only be understood in the context of the details set forth in the attached terms of

11  service, which explain, *inter alia*, how Defendants' variable rates will apply.  Accordingly,

12  because the welcome letters and terms of service, read as a whole, are disputed, the Court declines

13  to consider them as part of the Complaint for the purpose of the motion to dismiss.  *See Daniels-*

14  *Hall*, 629 F.3d at 998; *see also Davis*, 691 F.3d at 1159 (The "district court may, but is not

15  required to incorporate documents by reference.").

16         Each of the theories set forth in section IV of Defendants' motion to dismiss requires the

17  Court to consider the welcome letters, terms of service, or sales scripts.[4]  Without reference to

18  these documents, Defendants' arguments for dismissal fail.

19         Defendants' second argument is that Plaintiffs lack standing to pursue claims based on

20  variable rates.  In part, this argument fails for the reasons discussed above, because it requires

21  consideration of the sales scripts and written contracts.  Defendants also contend, however, that

22  none of the named plaintiffs have alleged that they were Spark customers for more than 12

23  months, or that their contracts were converted from fixed to variable rates.  Therefore, Defendants

24  argue, Plaintiffs lack standing to pursue claims based on Defendants' variable rate plans.  In the

25  claims in question, however, Plaintiffs allege that Defendants made oral misrepresentations to

26

27  _____

28  [4] The exception is Defendants' argument that "unjust enrichment" is not a separate cause of action.
(Mot. at 10.)  However, Plaintiffs concede that they do not allege a separate cause of action for
unjust enrichment.  (Opp. at 20.)

United States District Court
Northern District of California

1   falsely advertise and promise customers terms of service more favorable than terms later provided.

2   (FAC ¶¶ 36, 53-54.)  This legal theory is similar to a theory previously affirmed in *In re First*

3   *Alliance Mortg. Co.*, 471 F.3d 977, 991-992 (9th Cir. 2006) (affirming jury's finding of class-wide

4   fraud based on lender's oral misrepresentations).  Plaintiffs' allegations that the terms and

5   conditions that they received from Defendants were not what they had been promised provide

6   sufficient injury-in-fact to allege standing for the purpose of this motion to dismiss.  *See Lujan v.*

7   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Of course, as Plaintiffs acknowledge, their

8   ability to represent a class that includes claims relating to variable rate plans must be revisited at

9   the class certification stage.

10        The Court also denies Defendants' motion to dismiss based on their third argument, which

11   is that Plaintiffs' claims are insufficiently particularized under Rule 9(b).  Plaintiffs have pled the

12   approximate month during which Defendants' representatives approached Plaintiffs Amaya and

13   Gehrke at each of their homes; the location of the homes; and the specific representation of

14   decreased pricing that Defendants' sales representatives allegedly made in order to induce Mr.

15   Amaya and Ms. Gehrke to switch to Defendants' utility services.  (FAC ¶¶ 12-16.)  By pleading

16   the "time, place, and specific content of the false representations as well as the identities of the

17   parties to the misrepresentations," Plaintiffs have satisfied the requirements of Rule 9(b).  *Swartz*

18   *v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted).

19        **C.**     **Plaintiffs' Motion to Continue Class Certification Proceedings.**

20        The Court has reviewed Plaintiffs' administrative motion to continue the briefing and

21   hearing of Plaintiffs' motion for class certification and the opposition thereto.  Because of the need

22   for supplemental briefing on Defendants' motion to compel arbitration and the time for ruling on

23   that motion, the Court finds that Plaintiffs have shown good cause for continuing the class

24   certification hearing.  Additionally, the Court agrees with Plaintiffs that the question of whether to

25   amend the complaint to substitute proposed Plaintiff Gabino Ortiz for deceased Plaintiff Margaret

26   Smith should be resolved prior to briefing on class certification.  Accordingly, the Court GRANTS

27   Plaintiffs' administrative motion.

28

**CONCLUSION**

For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE the motion to compel arbitration of the claims of Plaintiff Gehrke.

The Court also DENIES Defendants' motion to dismiss the claims of Plaintiffs Gehrke and Amaya in the First Amended Complaint.

The Court GRANTS Plaintiff's motion to continue the schedule for the briefing and hearing of Plaintiffs' motion for class certification.  The hearing on the motion for class certification is hereby continued from June 3, 2016 to **August 5, 2016 at 9:00 a.m.**

The November 18, 2015 Notice of Withdrawal of Deceased Plaintiff Margaret Smith states that Plaintiffs seek to file a Second Amended Complaint in order to substitute a new class representative, Gabino Ortiz, for Margaret Smith.  The parties shall promptly meet and confer regarding whether they will stipulate to this amendment or whether a motion is required.  No later than April 18, 2016, the parties shall file one of the following: (a) if the parties agree to the proposed amendment of the Complaint to substitute a new class representative, the parties shall file a stipulation and proposed order regarding the schedule for the filing of the Second Amended Complaint and the response thereto; or (b) if the parties do not agree to the proposed amendment of the Complaint to substitute a new class representative, Plaintiffs shall file an appropriate motion.

Absent further order of this Court, Defendants' response to the First Amended Complaint is due within the time provided by the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: April 11, 2016

_____
JEFFREY S. WHITE
United States District Judge